# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 50256 | **DATE** | 6/17/2011 |
| **CASE TITLE** | First McHenry Corp. v. BancInsure, Inc. | | |

**DOCKET ENTRY TEXT:**

Defendant's motion to dismiss [7] is granted. This case is closed.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

On September 21, 2010, plaintiff, First McHenry Corporation, a federal charted national bank with offices in McHenry County, Illinois, filed a complaint against defendant, BancInsure, Inc., an organization principally located in Oklahoma City that provides various bonds and insurance policies to Illinois corporations. Plaintiff alleges that defendant breached the terms of a Financial Institution Bond when it failed to provide coverage for a loss plaintiff incurred in reliance on a defaulted loan. Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendant's motion is granted.

### I. BACKGROUND

Plaintiff alleges the following facts. Plaintiff and defendant engaged in an agreement whereby defendant would issue a three million dollar Financial Institution Bond (hereinafter the "Bond") to plaintiff in exchange for a premium. The Bond was drafted by defendant.

The interpretation of Insuring Clause (E) is at issue.[1] Clause (E) outlines coverage for losses resulting from good faith reliance on third-party actions. Sections (E)(1)(a)-(i) enumerate the types of securities covered. Following section (E)(1)(i) are three subsections, (i)-(iii), requiring that the security resulting in the loss contain a showing of forgery, alteration, loss, or theft. Plaintiff alleges subsections (i)-(iii) apply only to the security type listed in section (E)(1)(i), that is, a Statement of Uncertified Security, while defendant alleges subsections (i)-(iii) apply to all types of securities listed in sections (E)(1)(a)-(i).

On or about October 16, 2009, plaintiff filed a claim with defendant based on the funding of a Deerbart Financial Service Co. Lease (hereinafter the "Lease"). The Lease listed secured collateral of two chemical polishers. It was later discovered that the serial numbers on the polishers were fraudulent. Plaintiff relied on the Lease, the guarantees, and the listed collateral in determining to fund the Lease in the amount of $1,313,336.59. Deerbart defaulted on the Lease, thereby causing a loss to plaintiff based on its good faith reliance.

The Lease constitutes an Evidence of Debt, a Corporate Guarantee, and a Security Agreement, all of which are security instruments covered under Insuring Clause (E). Plaintiff has made demands to defendant for relief in coverage from the loss. Plaintiff alleges that coverage for its loss does not require a showing of forgery

| STATEMENT |
|---|

because it is not based on the security type listed in section (E)(1)(i). Defendant has refused to provide coverage for plaintiff's loss, alleging that plaintiff is not entitled to relief under the Bond because there is no evidence of forgery, as required by subsection (i).[2]

## II. ANALYSIS

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must look to whether plaintiff's complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must construe the well-pleaded facts as true and draw inferences in favor of the non-moving party. Cole v. Milwaukee Area Technical Coll. Dist., 634 F.3d 901, 903 (7th Cir. 2011). To defeat a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint containing factual allegations simply consistent with the defendant's liability stops short of the line between possibility and plausibility of entitlement to relief. Id.

An insurance policy will be construed to give effect to the parties' intent as expressed in the policy's language. First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co., 485 F.3d 971, 976 (7th Cir. 2007). Language is to be interpreted in the context of the entire policy and as a reasonable person in the position of the insured would understand it. Id. A court will prefer a contract interpretation that makes economic sense as opposed to an illogical interpretation. Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co., 280 F.3d 744, 747 (7th Cir. 2002). When interpreting commercial contracts, courts will presume the parties intended to accomplish rational results consistent with industry norms. Dispatch Automation, Inc. v. Richards, 280 F.3d 1116, 1119 (7th Cir. 2002); Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001). A court will not sanction the distortion of language as a means to reach a desired result. F.D.I.C. v. Am. Cas. Co. of Reading, Pa., 998 F.2d 404, 408 (7th Cir. 1993). Policy language is to be interpreted as to give effect to its plain, ordinary, and popular meaning. Id.

The issue presented in this case is not novel. Several other courts, including the Seventh Circuit, have examined similar or identical language in bond agreements and have found that the qualifying language in subsections (i)-(iii) of Insuring Clause (E) applies to all the types of securities enumerated in Clause (E). See Resolution Trust Corp. v. Aetna Cas. & Sur. Co. of Ill., 25 F.3d 570, 580 (7th Cir. 1994); see also First Nat'l Bank of Davis, Okla. v. Progressive Cas. Ins. Co., No. 10-6132, 2011 WL 304577, at *2 (10th Cir. Feb. 1, 2011); Brady Nat'l Bank v. Gulf Ins. Co., 94 F. App'x 197, 203 (5th Cir. 2004); French Am. Banking Corp. v. Flota Mercante Grancolombiana, S.A., 925 F.2d 603, 604 (2d Cir. 1991). The Seventh Circuit has defined the standard Bankers Blanket Bond as a "two-party agreement between the underwriter and the insured financial institution, pursuant to which the underwriter agrees to indemnify the insured against loss sustained by reason of specific perils described under six 'Insuring Agreements,' which are commonly referred to by the letter designating them in the bond." First Nat'l Bank of Manitowoc, 485 F.3d at 975. The six Insuring Agreements in a standard bond "cover the insured financial institution against loss arising from specified dishonest, fraudulent, or criminal acts." Id. at 977. In a standard Clause (E) Securities provision, a bank is protected against "losses resulting from the purchase of documents or other written instruments which prove to have been forged." Farmers Bank & Trust Co. of Winchester v. Transamerica Ins. Co., 674 F.2d 548, 551 (6th Cir. 1982).

In this case, the bond at issue is a standard Financial Institution Bond and Clause (E) is a standard clause in such bonds. Numerous courts have found Insuring Clause (E) to be unambiguous. For example, the Tenth Circuit explicitly held, in a nearly identically phrased Insuring Clause (E), that the qualifying language of subsections (i)-(iii), requiring forgery, alteration, loss or theft, unambiguously applies to all types of securities put forth in Clause (E). First Nat'l Bank of Davis, Okla., 2011 WL 304577 at *2. The district court noted that the qualifying language in subsections (i)-(iii) was not contained within the final section (E)(1)(i), but rather was

physically set off from sections (E)(1)(a)-(i) by spaces and indentations. First Nat'l Bank of Davis, Okla. v. Progressive Cas. Ins. Co., No. CIV-09-546-F, 2010 WL 5830487, at *5 (W.D.Okla. May 5, 2010), aff'd, No. 10-6132, 2011 WL 304577, at *2 (10th Cir. Feb. 1, 2011).

Other courts, including the Seventh Circuit, have consistently interpreted Insuring Clause (E) in a similar manner. See Resolution Trust Corp., 25 F.3d at 580 (acknowledging that a showing of loss or theft applies to all documents listed in Clause (E) of a standard bond); Brady Nat'l Bank, 94 F. App'x at 203 (accepting that the conditioning language of Clause (E) in a standard bond applies to all security types listed); French Am. Banking Corp., 925 F.2d at 604 (recognizing the need for a showing of the qualifying language of Clause (E) for recovery under a standard bond).

The qualifying subsections (i)-(iii) have an identical placement within Clause (E) as they did in the bond at issue in First National Bank of Davis, Oklahoma. These conditioning subsections are further removed from sections (E)(1)(a)-(i) by a comma, and then followed by the general term 'which.' This is additional evidence that the conditioning language of subsections (i)-(iii) were unambiguously meant to qualify all securities listed, and not simply to qualify the security type listed in section (E)(1)(i). Because plaintiff's proposed contractual interpretation is inconsistent with the intent of Clause (E) and the interpretation of the Seventh Circuit, it is rejected. First Nat'l Bank of Manitowoc, 485 F.3d at 980; Farmers Bank & Trust Co. of Winchester, 674 F.2d at 551.

Even if the court was persuaded by the argument that the bond is ambiguous, plaintiff's argument would still fail pursuant to the law's preference for an interpretation that is reasonable, is in harmony with the parties' intent, and makes economic sense. See First Nat'l Bank of Manitowoc, 485 F.3d at 976; Hartford Fire, 280 F.3d at 747. A Bankers Blanket Bond is not intended to be a policy of simple credit insurance. See French Am. Banking Corp. v. Flota Mercante Grancolombiana S.A., 752 F. Supp. 83, 88 n.5 (S.D.N.Y. 1990), aff'd, 925 F.2d 603 (2d Cir.1991); Republic Nat'l Bank of Miami v. Fidelity & Deposit Co. of Md., 894 F.2d 1255, 1263 (11th Cir. 1990). To interpret Clause (E) as plaintiff proposes would allow recovery for any loss as to the listed securities without a showing of forgery, alteration, loss, or theft, and would essentially transform the standard bond into a simple credit insurance policy. French Am. Banking Corp., 752 F. Supp. at 88 n.5; Republic Nat'l Bank of Miami, 894 F.2d at 1264. This interpretation would allow banks to rely on any type of security document "not because they are worthy of such reliance, but rather because the reliability of such documents is insured." Republic Nat'l Bank of Miami, 894 F.2d at 1264. Such an interpretation would discourage banks from thoroughly evaluating the credit worthiness of their customers. French Am. Banking Corp., 752 F. Supp at 88 n.5; Republic Nat'l Bank of Miami, 894 F.2d at 1264. This interpretation would result in a failure to differentiate between risks against which banks can protect themselves through due diligence and financial risks banks should not undertake. French Am. Banking Corp., 752 F. Supp at 88 n.5; Republic Nat'l Bank of Miami, 894 F.2d at 1264.

In addition, plaintiff's proposed interpretation would create a loophole in the Bond's coverage. It would allow essentially unlimited financial backing where defendant did not intend to offer such extensive protection. This is evidenced in other sections of the Bond, including the Exclusions Section, which offers further limitations on plaintiff's coverage, evidencing that the Bond is not to be construed as a boundless agreement. When reading Clause (E) in light of the policy as a whole, the policy's language and extensive Exclusions section can only be interpreted as support for an interpretation of Clause (E) that requires a showing of forgery, alteration, loss, or theft, as to all types of securities enumerated.

Furthermore, it is illogical to say the parties intended to require a showing of forgery on only one type of security commonly utilized. This is especially evident considering that the type of security listed in Clause (E)(1)(i), a Statement of Uncertified Security, has no distinct characteristics that would justify such a stark divergence. The court is not persuaded by plaintiff's arguments in support of such a novel interpretation of the

| STATEMENT |
|---|

Bond.

Plaintiff purports that any dispute as to the meaning of the Bond should be construed against defendant. In general, when contract language is found to be ambiguous, an interpretation against the drafter and in favor of the insured is preferred. First Nat'l Bank of Manitowoc, 485 F.3d at 976. However, a standardized Bankers Blanket Bond is distinguished from a normal contract of adhesion between unsophisticated parties. Id. at 977. When interpreting a Bankers Blanket Bond, the Seventh Circuit has held the normal construction against the drafter rule will not apply where both parties contributed to drafting the contract. Id.; Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 639 n.6 (7th Cir.1991). While plaintiff alleges the Bond was drafted solely by defendant, the parties are both sophisticated business entities dealing at arm's length. Two business savvy parties are capable of negotiating policy language and understanding the terms of an industry-wide bond form. Cont'l Corp. v. Aetna Cas. & Sur. Co., 892 F.2d 540, 545 (7th Cir. 1989). The general rule of construing terms against the drafter and in favor of coverage is not controlling in a dispute between established and experienced parties as it would be between a sophisticated organization and an unsophisticated, private party. Id. at 545-46; Dawn Equip. Co. v. Micro-Trak Sys., Inc., 186 F.3d 981, 989 n.3 (7th Cir. 1999).

In addition, plaintiff's argument that the grammatical rules of outline formation support an unconventional contract interpretation is not persuasive. Plaintiff cites numerous grammatical rules and documents not shown to be applicable to legal contract interpretation. When interpreting a contract, the court will give weight to the reasonable interpretation in light of the entire contract, the normative interpretation as determined by industry standards, and the plain and ordinary meaning of the language. First Nat'l Bank of Manitowoc, 485 F.3d at 976; Hartford Fire Ins. Co., 280 F.3d at 747; Dispatch Automation, Inc., 280 F.3d at 1120; Fishman, 247 F.3d at 302.

Finally, plaintiff's argument that defendant's contract interpretation is in conflict with other sections of the bond is not persuasive. Plaintiff cites Insuring Clause (C),[3] which contains a similar outline format as Clause (E). However, the subsections (i)-(iii) in Clause (C) are set off by a colon, as opposed to a comma in Clause (E), and are immediately following the restricting phrase "provided that covered Property transported in such a manner is limited to:" This language difference supports the notion that the subsections in Clause (C) are to be interpreted in a narrow sense, whereas the subsections in Clause (E) are to be interpreted as a broad extension of the language preceding them. Plaintiff's argument is overly technical and fails to account for the parties' intent.

### III. CONCLUSION

The plain and ordinary meaning of the contractual language requires a showing of forgery, alteration, loss, or theft, as a condition for coverage under Insuring Clause (E). This is the reasonable interpretation that makes economic sense. Plaintiff has not alleged forgery as to the Lease at issue. Accordingly, plaintiff has failed to state a claim upon which relief can be granted and therefore defendant's motion to dismiss is granted.

---

1. Insuring Clause (E), which is entitled "Securities," provides coverage for:

>> Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,

>>> (1) acquired, sold or delivered, given value, extended credit or assumed liability on the faith of any original

>>>> (a) Certified Security,
>>>> (b) Document of Title,

(c) Deed, mortgage or other instrument conveying title to, or creating or discharging a lien on, real property,
(d) Certificate of Origin or Title,
(e) Evidence of Debt,
(f) Corporate, partnership or personal Guarantee,
(g) Security Agreement,
(h) Instruction to a Federal Reserve Bank of the United States, or
(i) Statement of Uncertificated Security, which

(i) bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a Forgery,
(ii) is altered, or
(iii) is lost or stolen,

2. There is no suggestion that plaintiff's security was altered, lost, or stolen. Therefore subsections (ii) and (iii) are not applicable.

3. (C) IN TRANSIT

Loss of Property resulting directly from robbery, common-law or statutory larceny, theft, misplacement, mysterious unexplainable disappearance, being lost of made away with, and damage or destruction or the Property, while the Property is in transit anywhere in the custody of

(a) a natural person acting as a messenger of the Insured (or another natural person acting as messenger or custodian during an emergency arising from the incapacity of the original messenger),
(b) a Transportation Company and being transported in an armored motor vehicle, or
(c) a Transportation Company and being transported in a conveyance other than an armored motor vehicle provided that covered Property transported in such manner is limited to:

(i) records, whether recorded in writing or electronically,
(ii) Certified Securities issued in registered form and not endorsed, or with restrictive endorsements, and
(iii) Negotiable Instruments not payable to bearer, or not endorsed, or with restrictive endorsements.